**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

```
-----------------------------x
                             :
JAMES A. HARNAGE             :      Civ. No. 3:16CV01543(AWT)
                             :
v.                           :
                             :
DR. WU, et al.               :      January 31, 2019
                             :
-----------------------------x
```

## OMNIBUS RULING ON PLAINTIFF'S FOURTEEN MOTIONS TO COMPEL [Docs. #175, #176, #177, #178, #179, #181, #183, #186, #187, #188, #189, #190, #191, #192]

Self-represented plaintiff James A. Harnage ("plaintiff") has filed fourteen motions to compel, each of which seeks an order compelling a specific defendant to further respond to plaintiff's revised interrogatories and requests for production. See Docs. #175, #176, #177, #178, #179, #181, #183, #186, #187, #188, #189, #190, #191, #192 (collectively the "motions to compel").[1] Defendants have filed no response to plaintiff's motions, instead opting to rely on their objections to plaintiff's requests. See Doc. #205 at 13. On July 23, 2018, and July 26, 2018, Judge Alvin W. Thompson referred plaintiff's motions to the undersigned. [Docs. #185, #193]. For the reasons set forth below, the Court **GRANTS, in limited part, and DENIES, in large part,** plaintiff's motions to compel directed to Francis

---

[1] Plaintiff has also filed memoranda in support of these motions, which the Court has considered.

[**Doc. #175**], Dr. Naqvi [**Doc. #176**], Lightner [**Doc. #178**], O'Halloran [**Doc. #179**], Bonetti [**Doc. #183**], Greene [**Doc. #186**], Lovely-Bombardier [**Doc. #187**], Candelario [**Doc. #189**], Chouinard [**Doc. #190**], Henderson [**Doc. #191**], and Furtick [**Doc. #192**]. The Court **DENIES in their entirety** plaintiff's motions to compel directed to Dr. Pillai [**Doc. #177**], McChrystal [**Doc. #181**], and Shortridge [**Doc. #188**].

## I. Procedural History and Factual Background

### A. Pleadings-Related Background

On September 13, 2016, plaintiff filed a Complaint alleging that defendants were deliberately indifferent to his medical needs by denying him certain medications. See generally Doc. #1, Complaint. Plaintiff also alleged that certain defendants retaliated against him. See generally id. On October 19, 2016, Judge Thompson issued an Initial Review Order of the Complaint. See Doc. #7. The Initial Review Order: (1) dismissed all claims alleged against Correctional Managed Health Care ("CMHC"), see id. at 10; (2) permitted plaintiff's deliberate indifference to medical needs claims to proceed, see id. at 12; (3) permitted the retaliation claim against Dr. Naqvi to proceed, see id. at 14; (4) dismissed the retaliation claims against all other defendants, see id. at 14-15; and (5) permitted the state law claims to proceed, see id. at 15.

Defendants filed an appearance in this matter on January 9, 2017. [Doc. #21]. On March 29, 2017, defendants filed a partial motion to dismiss. [Doc. #28]. On November 16, 2017, Judge Thompson granted defendants' partial motion to dismiss, in part. See Doc. #54. Judge Thompson ordered:

> The defendants' motion to dismiss [ECF No. 28] is hereby GRANTED as to the claim for changing the prescription for clobatasol propionate to Temovate and as to all claims based on acts occurring before September 13, 2013.
>
> The case will proceed on the deliberate indifference claims regarding flunisolide and Flonase, the denial of clobatasol propionate and Temovate, the claims regarding gabapentin, and the retaliation claim against Dr. Naqvi.

Doc. #54 at 15-16.

Also on November 16, 2017, Judge Thompson issued a ruling on plaintiff's then-pending motion for leave to amend the complaint. [Docs. #43, #55]. Judge Thompson denied plaintiff's motion, without prejudice, and permitted plaintiff to "refile his motion within 30 days accompanied by a proposed amended complaint that includes only the claims remaining in this case [as set forth in the motion to dismiss ruling] and the retaliation claim that was included in Harnage v. Caldonero, No. 3:16cv1876(AWT)." Doc. #55 at 3 (footnote omitted) (sic).

Plaintiff now proceeds pursuant to a "Corrected and Re-Scanned Second Amended Complaint[,]" which was filed on December 22, 2017 (hereinafter the "Second Amended Complaint"). [Doc.

#69, Second Amended Complaint].[2] The allegations of the Second

Amended Complaint relate to plaintiff's time spent incarcerated

at the MacDougall Correctional Institute from September 13,

2013, to July 2016. <u>See</u> Doc. #69, Second Amended Complaint at

¶1.

Plaintiff alleges that as he "has aged, he has grown to

require certain medications to provide him a reasonable quality

of life and to prevent needless suffering." <u>Id.</u> at ¶19.

Plaintiff alleges that defendant Dr. Wu

> initiated a mandate to medical staff to reduce budgetary
> expenses by any means, including the delay, denial and
> refusal to treat inmate medical needs, or mandatory
> prescriptive use of less effective medications and the
> use or reuse of medical supplies or improper medical
> equipment; without concern for the health or well being
> of the inmates, including Harnage.

<u>Id.</u> at ¶22 (sic). As to the other defendants, plaintiff alleges:

"At multiple different times during the operative time period,

that defendants Pillai, O'Halloran, Naqvi, McChrystal and

Greene, ... refused, denied and/or unreasonably delayed

prescribing or renewing prescriptions for solely budgetary and

economic reasons, leaving the plaintiff to suffer needlessly."

<u>Id.</u> at ¶24. Similarly, plaintiff alleges that defendants "Rob,

---

[2] The allegations of plaintiff's Second Amended Complaint are not
entirely limited to the constraints of Judge Thompson's prior
rulings. <u>See</u> Docs. #54, #55. The Court offers no opinion on the
viability of any claims alleged in the Second Amended Complaint
that fall outside of the parameters set by Judge Thompson's
prior rulings.

Caldonero, Caroline, Nikki, Tawana, Greene, Marissa, ... interfered with, delayed or denied the renewal or refill of properly prescribed medications by destroying and/or discarding refill requests and/or refusing to dispense the medications from the pharmacy; for economic ... purposes, leaving plaintiff to suffer needlessly." Doc. #69, Second Amended Complaint at ¶25 (sic).[3] Plaintiff alleges that "said defendants" have "delay[ed] the distribution of refills" of his medication, and that he "has repeatedly watched as other inmates, who placed their orders for refills well after the plaintiff, have received their medications weeks before Harnage." Id. at ¶¶27-28.

Regarding flunisolide and Flonase, plaintiff asserts that Dr. Wu "received a discount on the cost of the nasal spray 'Flonase', and/or an economic 'kick back' from the manufacturer, and ordered that all inmates be changed over to the Flonase from whatever other nasal sprays they were taking, ... including

---

[3] There are inconsistencies in the spellings and given names of defendants in the Second Amended Complaint when compared to the motions to compel. From what the Court can discern: defendant "Rob" is defendant Robert Bonetti referenced in Doc. #183; defendant "Caldonero" is defendant Lisa Candelario referenced in Doc. #189; defendant "Caroline" is defendant Caroline Chouinard referenced in Doc. #190; defendant "Nikki" is defendant Nikia Henderson referenced in Doc. #191; defendant "Tawana" is defendant Tawana Furtick referenced in Doc. #192; defendant "Marissa" is defendant Melissa Lovely-Bombardier referenced in Doc. #187; and defendant "James" is defendant James Shortridge referenced in Doc. #188. The Court refers to the defendants as they are referenced in the document(s) cited or relied on by the Court.

Harnage, who was on Flunisolide for years, without problem."
Doc. #69, Second Amended Complaint at ¶32 (sic). Plaintiff
alleges that he is allergic to Flonase, which causes him to
suffer from burning in his nostrils and nose bleeds. See id. at
¶¶34-35. Plaintiff alleges that because Flonase is dispensed in
a glass bottle, inmates were required to receive the medication
through "med-line" and were given the medication only once per
day. See id. at ¶33. This means that unlike the flunisolide,
which was dispensed in a plastic bottle, plaintiff was unable to
keep the nasal spray in his cell and could not use the
medication as needed. See id. at ¶37. Plaintiff "believes ...
defendants are attempting to control the allowable dosage
received of the nasal spray to less than the manufacturers
recommended minimal dosage, solely to save money, without regard
for the plaintiffs physical and mental well being." Id. at ¶40
(sic); see also id. at ¶57.

Plaintiff alleges that on or about May 2016, he saw Dr.
Naqvi "for renewal of his nasal spray" and that plaintiff tried
to discuss with Dr. Naqvi his issues with the Flonase. Id. at
¶41. Plaintiff alleges that Dr. Naqvi refused to hear his
complaints and instead renewed plaintiff's Flonase prescription.
See id. at ¶¶42-43. Thereafter, plaintiff "filed a medical
grievance known as a Health Service Review." Id. at ¶44. On or
about June 2016, plaintiff "initiated legal action attempting to

correct medical deficiencies[.]" Doc. #69, Second Amended
Complaint at ¶45. When plaintiff informed Dr. Naqvi that he had
"initiated legal action to challenge the denial of the
Flunisolide, Naqvi sarcastically told Harnage, 'Really, alright
let's see how you like not having any nasal spray. I'll just
discontinue the order completely.'" Id. at ¶46 (sic). Plaintiff
alleges that Dr. Naqvi then discontinued his Flonase
prescription, and replaced it with an "ineffective" saline
solution. See id. at ¶¶47-49.

Plaintiff alleges that he "has maintained an active order
for Clobetasol Propionate to control and treat his scalp
psoriasis." Id. at ¶64. Plaintiff alleges that he did not
receive refills of the Clobetasol Propionate "for several
months" and "learned that the order was changed to 'Temovate',"
a cream-based prescription which "gets into his hair, then onto
his pillow at night and into his eyes and mouth." Id. at ¶55
(sic). Plaintiff alleges that he did "not receive[] a single
delivery of the Temovate for more than a year." Id. at ¶56.
Plaintiff alleges that despite his repeated grievances
concerning this issue, "the matter was not corrected and
plaintiff was left to suffer with large patches of plaque
psoriasis that spreads from his scalp down to his ears causing
pain, itching, burning and bleeding all of which is intensified
each time the plaintiff showers." Id. at ¶57. Plaintiff

"believes ... that defendants Rob, Caldonero, Caroline, Nicki, Tawana, Greene, Marissa, ... have been refusing to dispense Clobetasol and Temovate to ... save money." Doc. #69, Second Amended Complaint at ¶58. Plaintiff also asserts that defendants "receive bonuses based on a percentage of savings, from the medical expenses budget." Id. at ¶59.

Plaintiff next alleges that "since being diagnosed as a diabetic, [he] has been prescribed Gabapentin, for diabetic neuropathy; at a dose of 120 mg, 3 times per day at 8 am, 2pm and 8pm." Id. at ¶60 (sic). Plaintiff alleges that the Department of Correction ("DOC") previously permitted an inmate to keep Gabapentin in his or her cell, but that the medication has since been reclassified such that it must now be received at the med-line. See id. at ¶¶60-61. Plaintiff alleges that this change "created a greater demand on medical staff[]" who "began making inmates, including Harnage, wake up at 5 am to receive their 8 am doses, for their own personal convenience[.]" Id. at ¶¶63-64 (sic).[4] Plaintiff alleges that initially, medical staff would deliver the 5 a.m. dose to inmates at their respective cells, but that after several months, "defendants instituted a policy that required inmates to go outside their housing units to get their Gabapentin at 5 am." Id. at ¶¶66-67 (sic).

_____

[4] Medical staff did not change the dosage times for the other two daily Gabapentin doses. See id. at ¶65.

Plaintiff alleges: "This practice relied on the housing unit custody officer simply 'clicking' the automatic locks on the cell doors to release the inmates from their cells. If the inmates were not awake, and standing at their cell doors, the staff simply listed the inmates, including Harnage, as having 'refused' their medications." Doc. #69, Second Amended Complaint at ¶¶68-69. Plaintiff alleges that "[b]ecause the clicking was insufficient to wake Harnage, he missed many 5am med-lines and staff refused to deliver the medication at the properly prescribed 8 am." Id. at ¶73 (sic). Plaintiff further alleges that after he pointed out the proper prescription times for the Gabapentin that "defendants Rob, Caldonero, Caroline, Greene, James, Tawanna, Nikki, Marissa, ... maliciously went to Naqvi and Pillai and talked them into changing the prescription time for the first does to 5 am, for their own personal convenience, rather than, plaintiffs health and well being." Id. at ¶74 (sic). Because he still could not awake at 5 a.m., plaintiff alleges that defendants eliminated his first dose of Gabapentin, rather than give it to him at the correct time. See id. at ¶75.

Plaintiff alleges that for one week, defendants Caroline, Greene, Marissa, and Tawanna refused to allow plaintiff to bring his 2 p.m. dose of Gabapentin to his trial in federal court, in contravention of DOC and CMHC policy. See id. at ¶¶77-79. After having addressed this issue with Judge Thompson, plaintiff

alleges that "defendants, Rob, Caldonero, Greene, Caroline, Nikki, Tawanna, ... and Marissa, maliciously eliminated plaintiffs 2 pm dose in collusion with Wu, Pillai and Naqvi." Doc. #69, Second Amended Complaint at ¶81, ¶83 (sic). Eight weeks later, Dr. Wu "authorized the defendants to discontinue every inmates 2 pm dosage, solely for staff convenience, rather than the inmate physical and mental well being." Id. at ¶85 (sic). Plaintiff contends that defendants have asserted that "if they split the 2 pm dose and give higher doses on the First and Third Dosages it will provide the same relief and coverage." Id. at ¶86 (sic). Plaintiff alleges that the actions of defendants "are arbitrary and without consideration for the long term health risks associated with the higher doses of Gabapentin than is recommended by the Manufacturer and the Food and Drug Administration (FDA)." Id. at ¶90. Plaintiff contends that "defendants failed to recognize the dosing irregularities in the timing of the administration of the medication[,]" and that because of defendants' actions, including the discontinuance of his morning dose, he went sixteen hours between receiving doses of Gabapentin. See id. at ¶91, ¶96. Plaintiff alleges that as a result, he experienced "pain feeling as if his feet were on fire with a thousand pins being stuck in for good measure[]." Id. at ¶96. Plaintiff "repeatedly attempted to address his concerns with each of the defendants," but they "could not have cared any

less." Doc. #69, Second Amended Complaint at ¶98. Plaintiff also alleges that "defendants have engaged in the practice of simply ignoring or discarding all of plaintiffs written requests and health service reviews." Id. at ¶100 (sic).

Count Two encompasses the retaliation claim originally pled in Harnage v. Caldonero, No. 16CV1876(AWT) (D. Conn. Nov. 15, 2016). Plaintiff alleges that while he was confined at MacDougall, he "actively challenged deficiencies in his medical care by filing grievances and lawsuits to enforce his right to proper care." Doc. #69, Second Amended Complaint at ¶¶110-11. Plaintiff alleges that "[o]n or about May 27, 2013, plaintiff reported the cross contamination of insulin by a medical staff member who 'double-dipped' a hypodermic needle while treating diabetic inmates." Id. at ¶112. Plaintiff alleges that his report resulted in "an intensive medical response," and "added workload and change in policies and procedures, which added more stringent guidelines, angered some of the medical staff at MacDougall, the defendants herein[.]" Id. at ¶¶113-14. Immediately following his report, "defendants began giving Harnage a hard time receiving medical care, ... as well as interfering with the timely refills of the plaintiffs prescriptions." Id. at ¶116 (sic). The alleged "denial and/or delay of plaintiff's prescriptions and refills was being aggravated by Wu, who issued the mandate that medical staff take

drastic measures to reduce costs." Doc. #69, Second Amended
Complaint at ¶117. Plaintiff asserts that "defendants acted in a
conspiracy, one with the other to deny the plaintiff adequate
medical care equal to that afforded to all other inmates whom
did not file complaints, grievances or lawsuits against medical
staff." Id. at ¶119 (sic). Plaintiff alleges: "For quite some
time after reporting the insulin cross contamination, the
plaintiffs requests for refills and renewals of his
prescriptions were either not processed or delayed in the
distribution thereof, by said defendants, for as long as 5-6
weeks at a time." Id. at ¶121 (sic). Plaintiff alleges that
defendants specifically interfered with his receipt of
Ibuprofen, for his pain management, and as a result, plaintiff
needlessly suffered. See id. at ¶¶122-28. Plaintiff further
asserts that "[e]very time that the plaintiff attempted to file
a Health Service Review (HSR) to remedy the deprivation of his
pain reliever, said defendants also interfered with the receipt,
filing, processing and response to the Administrative remedy."
Id. at ¶129.

    B.   Discovery-Related Background

On April 26, 2018, the Court held an in-person discovery
conference in this matter to address twenty-four motions to
compel, and several other motions, filed by plaintiff. See Docs.
#140, #141. Following that conference, on May 7, 2018, the Court

issued a Memorandum of April 26, 2018, Discovery Conference and Ruling on Pending Motions (hereinafter the "Discovery Memorandum and Order"). [Doc. #141]. In pertinent part, the Court ordered:

> As to the discovery directed to the other defendants, which defense counsel has not received, plaintiff may either re-issue those requests, bearing in mind the parameters of discovery discussed during the April 26, 2018, discovery conference, **or** re-serve his original requests.
>
> ...
>
> In the event plaintiff proceeds with his original requests, he need not re-serve those requests on defendants. Rather, on or before May 31, 2018, plaintiff shall file a notice on the docket indicating whether he: (a) seeks to proceed on his original requests, and if so, identifies the motions to compel by document number to which the requests are appended; **or** (b) seeks to issue reviewed requests.

Id. at 13-14 (emphases modified). On May 31, 2018, plaintiff filed a Notice stating that he had served "each of the remaining 15 defendants ... one copy each of Plaintiff's Revised Interrogatories and Plaintiffs Revised Request for Production, consistent with this Courts Order #141." Doc. #148 at 1 (sic). In light of that representation, on June 7, 2018, the Court entered an Order denying, as moot, each of plaintiff's twenty-four motions to compel that related to plaintiff's original discovery requests. See Doc. #150. On June 11, 2018, plaintiff filed a second Notice (dated May 24, 2018), which stated he wished to proceed on his original requests and would "re-issue a select few revised requests to each of the defendants[.]" Doc.

#151 at 1. On June 12, 2018, plaintiff filed an objection to the undersigned's June 7, 2018, Order. [Doc. #152].

On October 29, 2018, and December 5, 2018, the parties filed two joint status reports detailing their efforts to resolve the many pending discovery disputes spanning plaintiff's federal cases. <u>See</u> Docs. #203, #205. The parties have reached some agreements concerning the production of documents in this case, and plaintiff's other federal cases. <u>See</u> Doc. #205 at 4-5, 14-16.[5]

## II.  <u>Legal Standard</u>

Rule 26(b)(1) of the Federal Rules of Civil Procedure sets forth the scope and limitations of permissible discovery:

> Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable.

---

[5] The Supplemental Joint Status Report reflects plaintiff's belief that during the April 26, 2018, discovery conference the Court permitted plaintiff "to both rely on – and deem served – the purported interrogatories filed upon the docket and then also serve revised interrogatories too[.]" Doc. #205 at 12. That was <u>not</u> the option provided by the Court. Indeed, as the Discovery Memorandum and Order states, plaintiff was to choose <u>one</u> of the two options given. <u>See</u> Doc. #141 at 13-14. The Court has already ruled on this issue, <u>see</u> Doc. #150, to which plaintiff has objected, <u>see</u> Doc. #152. The Court will not address the issue further here.

Fed. R. Civ. P. 26(b)(1). "[T]he burden of demonstrating relevance remains on the party seeking discovery." Bagley v. Yale Univ., 315 F.R.D. 131, 144 (D. Conn. 2016) (citation omitted), as amended (June 15, 2016); Republic of Turkey v. Christie's, Inc., 326 F.R.D. 394, 400 (S.D.N.Y. 2018) (same). Once the party seeking discovery has demonstrated relevance, the burden then shifts to "[t]he party resisting discovery ... [to] show[] why discovery should be denied." Cole v. Towers Perrin Forster & Crosby, 256 F.R.D. 79, 80 (D. Conn. 2009) (alterations added).

## III. **Discussion**

Plaintiff has filed fourteen motions to compel, each directed to a separate defendant regarding his or her responses to plaintiff's revised interrogatories and requests for production. Each of the revised interrogatories and requests for production appears to be identical.[6] Accordingly, the Court addresses plaintiff's arguments by the revised interrogatory and request for production, rather than by each defendant. To the extent a certain interrogatory or request for production requires a specific response from a specific defendant, then the Court will address that as appropriate.

---

[6] The only variation comes from a few additional revised interrogatories and one additional request for production directed to defendant Dr. Naqvi. See Doc. #176.

A.  <u>Revised Interrogatories</u>

Plaintiff seeks to compel additional responses from defendants Francis (Doc. #175) and Dr. O'Halloran (Doc. #179) to revised interrogatory 1. Revised interrogatory 1 asks: "Have you ever been disciplined by the DOC or CMHC, or found liable in any civil action, for retaliating against an inmate? If so, identify the disciplinary or civil action taken and the inmate offended." Doc. #175 at 1; Doc. #179 at 1. Defendants Francis and Dr. O'Halloran did not object to revised interrogatory 1 and instead answered: "[A]nswer to be provided through supplement." Doc. #175-2 at 3; Doc. #179-2 at 3. To the extent defendants Francis and Dr. O'Halloran have not already done so, each shall serve his supplemental answer to revised interrogatory 1 <u>forthwith</u>, and in any event, no later than **February 14, 2019.** Additionally, to the extent defendants Francis and Dr. O'Halloran have not already done so, each defendant shall provide a sworn certification of his interrogatory responses <u>forthwith</u>, and in any event, no later than **February 14, 2019.** <u>See</u> Doc. #175 at 1 (noting the "lack of any declaration signed by the defendant."); Doc. #179 at 1 (same).[7]

---

[7] In the Supplemental Status Report, dated December 5, 2018, counsel for defendants represented that he

> forgot to follow up and supplement O'Halloran's response. Counsel will obtain an executed supplemental response including appropriate answers from O'Halloran

Plaintiff seeks to compel additional responses from defendants Francis (Doc. #175) and Dr. O'Halloran (Doc. #179) to revised interrogatory 2. Revised interrogatory 2 asks: "Have you ever been disciplined by the DOC or CMHC, or found liable in any civil action, for any misconduct against an inmate? If so, identify the disciplinary or civil action, taken and the inmate offended." Doc. #175 at 2 (sic); Doc. #179 at 2 (sic). Each defendant objected that

> this interrogatory is overly broad or unduly burdensome. It seeks information not relevant to the case and instead appears to seek impermissible propensity evidence. The Court ruled already that plaintiff may not conduct fishing expeditions regarding the defendants' personnel files or seek irrelevant propensity evidence. Instead the Court allowed plaintiff to issue an interrogatory asking: "whether that defendant has ever been disciplined by the DOC or CMHC, or found liable in a civil action, for retaliating against an inmate." (Doc. 141 p. 11).

Doc. #175-2 at 3; Doc. #179-2 at 3. Plaintiff asserts, <u>inter alia</u>, that the information sought "is relevant to the central issues of this action[,]" and contends that each defendant's objection "is not substantive, lacks merit and fails to conform

---

> and will serve it upon plaintiff forthwith. Undersigned has discussed this with plaintiff during a meet-and-confer-call. ... Based on the parties discussions, the defendants do not construe this to be an issue of contention ... though plaintiff does not waive his objections to O'Halloran's objections or to the proposed supplemental answers.

Doc. #205 at 13-14 (sic).

with federal and local rules." Doc. #175 at 2; see also Doc.
#179 at 2. As currently framed, revised interrogatory 2 is over
broad and seeks information which is not relevant to the claims
in this case. The term "any misconduct" implicates a much
broader swath of information than that which could be considered
relevant under the case law in this Circuit. See, e.g., Frails
v. City of New York, 236 F.R.D. 116, 117-18 (E.D.N.Y. 2006).
Accordingly, the Court will not require defendants Francis or
Dr. O'Halloran to answer revised interrogatory 2.

Revised interrogatory 3 asks each defendant to: "Identify
any and all shifts worked by you as a medical staff member at
MacDougall between September 2013 and July 2016, including: a.
the date of the shift, and b. which shift you worked, and; c.
the post and duties assigned you on each shift[.]" Doc. #175 at
2 (sic).[8] Each defendant objected that

> these interrogatories are overly broad in scope and
> unduly burdensome. They are not reasonably limited in
> time or duration. They seek information that is not
> relevant to this case. This Court already ruled that
> plaintiff may not demand that the defendants in this
> action review plaintiff's entire medical chart for the
> period of September 2013 until July 2016 and identify
> their entries or entries by others. Plaintiff instead
> was required to identify specific entries or other more
> specific time periods that are central to the specifics

---

[8] The quoted revised interrogatory is an example of the revised
interrogatory issued to each of the defendants. The Court will
not cite to each of the fourteen motions where the request,
objection, answer, or argument by plaintiff is the same or
similar.

> of this case. (Doc. 141 p. 11). Seeking each and every
> shift is similarly overbroad and unduly burdensome.

Doc. #175-2 at 4. Notwithstanding those objections, defendants McChrystal (Doc. #181-2 at 4), Bonetti (Doc. #183-2 at 4), Greene (Doc. #186 at 12), Lovely-Bombardier (Doc. #187 at 12), Shortridge (Doc. #188 at 13), Candelario (Doc. #189 at 12), Chouinard (Doc. #190 at 12), Henderson (Doc. #191 at 12), and Furtick (Doc. #192 at 12) each responded with their general assigned shift information. Plaintiff contends that the information sought "is relevant to the central issues of this action[,]" and that each defendant's objection "is not substantive, lacks merit and fails to conform with federal and local rules[.]" Doc. #175 at 3. As to those defendants who provided an answer to revised interrogatory 3, plaintiff contends that each defendant's answer "is incomplete and fails to provide the information requested." Doc. #181 at 2. Plaintiff fails to articulate how the information sought in revised interrogatory 3 is relevant to the claims remaining in this matter. Additionally, having each defendant identify the date of each shift he or she worked over a three-year period is unduly burdensome. Accordingly, the Court sustains defendants' objections on the grounds of relevance and undue burden, and will not require a further response to revised interrogatory 3 from any defendant.

Revised interrogatory 4 asks each defendant: "For the pertinent time frame for each shift identified in response to interrogatory number 3 above, review the plaintiffs medical record and identify each entry authored by you, including: a. the date of the entry, and; b. the purpose of the entry, and; c. the substance of the entry, including a readable print, in layman's term; of the written entry and its description." Doc. #175 at 3 (sic).  Each defendant objected that

> these interrogatories are overly broad and unduly burdensome. They are not reasonably limited in time or duration. They seek information that is not relevant to this case. This Court already ruled that plaintiff may not demand that the defendants in this action review plaintiff's entire medical chart for the period of September 2013 until July 2016 and identify their entries or entries by others. Plaintiff instead was required to identify specific entries or other more specific time periods that are central to the specifics of this case. (Doc. 141 p. 11).

Doc. #175-2 at 5. Each defendant, except defendants Francis (Doc. #175) and O'Halloran (Doc. #179), answered revised interrogatory 4 by referring plaintiff "to his medical chart or other records provided in this litigation." Doc. #178-2 at 5. Plaintiff contends that the information sought "is relevant to the central issues of this action. Further, defendants 'objection' lacks merit, is not substantive, and fails to conform with federal and local rules." Doc. #175 at 7 (sic). For those defendants that provided an answer, plaintiff also generally asserts that each defendant's answer "fails to comply

with FRCVP 33(d)(1), among others." Doc. #176 at 3. The Court
sustains defendants' objection that revised interrogatory 4 is
unduly burdensome, particularly considering the relevant time
frame of the claims in this case and plaintiff's medical
history, which the Court believes to be extensive. Nevertheless,
it appears from the Supplemental Joint Status Report that the
parties have resolved any dispute concerning the answers
provided to revised interrogatory 4. See Doc. #205 at 3-4.
Accordingly, the Court will require no further response to
revised interrogatory 4 from any defendant.

In addition to five subparts, revised interrogatory 5 asks
each defendant: "For the pertinent time frame for each shift
identified in response to interrogatory #3 above, identify which
days, during the relevant time period, of September 2013 through
July 2016; if any, that you picked up and/or processed, inmate
request forms and health service reviews from the 'medical
mailboxes' at MacDougall[.]" Doc. #192 at 3 (sic). The subparts
of revised interrogatory 5 then seek: (1) the dates on which the
defendant retrieved the contents of the medical mailboxes; (2)
the date on which the defendant processed the contents of the
medical mailboxes; (3) the housing unit for which the defendant
retrieved or processed the contents of the medical mailboxes;
(4) "the manner in which you handled, processed or disposed of
any of the contents of the medical mailboxes, for each date

identified[;]" and (5) "the individual, if any, to whom you surrendered the contents of the medical mailboxes, for each date identified." Doc. #192 at 3-4.[9] Each defendant objected that

> these interrogatories are overly broad and unduly burdensome. They are not reasonably limited in time or duration. They seek information that is not relevant to this case. This Court already ruled that plaintiff may not demand that the defendants in this action review plaintiff's entire medical chart for the period of September 2013 until July 2016 and identify their entries or entries by others. Plaintiff instead was required to identify specific entries or other more specific time periods that are central to the specifics of this case. (Doc. 141 p. 11). Seeking each and every instance a medical mailbox was emptied or processed is similarly unduly burdensome.

Doc. #192 at 14-15. Defendants Francis, Dr. Naqvi, and Dr. O'Halloran did not provide an answer to revised interrogatory 5. See generally Docs. #175, #176, #179. The remaining defendants answered as follows:

| Defendant | Answer |
|-----------|--------|
| Lightner | "[T]he defendant remembers collecting the contents from a medical mailbox in the infirmary at MacDougall one time several years ago." Doc. #178-2 at 7 |
| Bonetti | "[T]he defendant has collected the contents of medical mailboxes. However, he cannot remember all the specific instances of this or the corresponding details that these inappropriate and objectionable interrogatories seek." Doc. #183-2 at 7. |
| Greene | "[T]he defendant believes she has collected the contents of medical mailboxes. However, she cannot remember all the specific instances of this or the corresponding |

---

[9] Plaintiff does not seek to compel a further response to revised interrogatory 5 from either defendant Dr. Pillai or defendant McChrystal. See generally Docs. #177, #181.

| Defendant | Answer |
|-----------|--------|
|  | details that these inappropriate and objectionable interrogatories seek." Doc. #186 at 15. |
| Lovely-Bombardier | "[T]he defendant believes she has collected the contents of medical mailboxes. However, she cannot remember all the specific instances of this or the corresponding details that these inappropriate and objectionable interrogatories seek." Doc. #187 at 15. |
| Shortridge | "To the best the defendant can remember, he does not recall collecting the contends of medical mailboxes at MacDougall from September 2013 through July 2016." Doc. #188 at 16. |
| Candelario | "[T]he defendant has collected the contents of medical mailboxes. However, she cannot remember all the specific instances of this or the corresponding details that these inappropriate and objectionable interrogatories seek." Doc. #189 at 15. |
| Chouinard | "[T]he defendant has collected the contents of medical mailboxes. However, she cannot remember all the specific instances of this or the corresponding details that these inappropriate and objectionable interrogatories seek." Doc. #190 at 15. |
| Henderson | "[T]he defendant has collected the contents of medical mailboxes. However, she cannot remember all the specific instances of this or the corresponding details that these inappropriate and objectionable interrogatories seek." Doc. #191 at 15. |
| Furtick | "[T]he defendant has collected the contents of medical mailboxes. However, she cannot remember all the specific instances of this or the corresponding details that these inappropriate and objectionable interrogatories seek." Doc. #192 at 15. |

Plaintiff generally contends that the information sought by

revised interrogatory 5 is relevant to the central issues of

this action, that each answering defendant has failed to provide

the entirety of the information sought, and that each defendant's objection is not proper under the federal or local rules. See, e.g., Doc. #178 at 5, Doc. #189 at 4. Revised interrogatory 5 seeks some relevant information in light of the allegations of the Second Amended Complaint that defendants ignored, discarded, and/or interfered with the processing of plaintiff's health service reviews. See Doc. #69, Second Amended Complaint at ¶100, ¶115, ¶129. However, the information sought by the subparts of revised interrogatory 5 is unduly burdensome. Accordingly, the Court will require each of the following defendants to answer, or supplement their answer to, revised interrogatory 5, as modified by the Court: Dr. Naqvi, Dr. O'Halloran, Lightner, Furtick, Candelario, Francis, Chouinard, Henderson, Bonetti, Greene, and Lovely-Bombardier. The Court will require no further response to revised interrogatory 5 from defendant Shortridge, in light of his answer, under oath, that he does not recall collecting the contents of the medical mailboxes. See Doc. #188 at 15.

Defendants Dr. Naqvi, Dr. O'Halloran, Lightner, Furtick, Candelario, Francis, Chouinard, Henderson, Bonetti, Greene, and Lovely-Bombardier shall each attempt to identify the day(s) on which he or she collected or processed the contents of the medical mailboxes during the relevant time period. Each defendant should indicate the general steps he or she took to

process the contents of the medical mailboxes during the relevant time period. If a defendant is unable to recall such information, that defendant should detail the efforts that he or she undertook to ascertain the information requested. See Zanowic v. Reno, No. 97CV5292(JGK)(HBP), 2000 WL 1376251, at *3 (S.D.N.Y. Sept. 25, 2000) ("Rule 33 does not require a party to provide information that is unknown and unknowable to that party. In responding to interrogatories, however, a party is under a duty to make a reasonable inquiry concerning the information sought in interrogatories, and a party's failure to describe his efforts to obtain the information sought by plaintiffs renders his responses insufficient."); see also 7 James Wm. Moore et al, Moore's Federal Practice §33.102[3] (3d ed. 2017). Each of the above-identified defendants shall provide his or her supplemental responses to revised interrogatory 5 on or before **March 4, 2019.**

As to Dr. Naqvi, plaintiff seeks to compel additional responses to revised interrogatories 6 and 7. See Doc. #176 at 4-5. Revised interrogatory 6 states: "In revision of plaintiff's originally submitted Interrogatory #4, for which plaintiff sought to compel, it is reframed as follows: Have you ever been employed in the medical field by someone other than CMHC, and if so, state the reason for your separation from that employment, and the employer with their current or last known business

address." Doc. #176-2 at 6-7. Dr. Naqvi objected to revised interrogatory 6 on that grounds that it "is overly broad or unduly burdensome. It is vague or ambiguous. It is not clear what plaintiff means by 'employed.' Further, plaintiff was provided the same or similar information by Naqvi in responses to another set of interrogatories." Doc. #176-2 at 7. Notwithstanding that objection, Dr. Naqvi answered: "[P]laintiff is referred to the defendant's May 31, 2018 responses to plaintiff's 'Third Interrogatories Directed to Naqvi.'" Id. Plaintiff asserts that the information sought by revised interrogatory 6 is relevant, Dr. Naqvi's answer is not sufficient because it does not provide the entirety of the information sought, and Dr. Naqvi's objection "is not substantive, lacks merit and fails to conform with federal and local rules." Doc. #176 at 5. The Court has reviewed Dr. Naqvi's responses to plaintiff's Third Set of Interrogatories. See Doc. #155 at 27-43. Interrogatory 4 of that Third Set of Interrogatories asks Dr. Naqvi for the same information as requested by revised interrogatory 6 -- the only difference being that interrogatory 4 does not request the address of Dr. Naqvi's prior employer. Compare Doc. #176-2 at 7, with Doc. #155 at 42. The Court does not find that the address of Dr. Naqvi's prior employer(s) is relevant to the claims remaining in this matter. Additionally, the information sought by revised

interrogatory 6 is unreasonably duplicative of that sought by interrogatory 4, which Dr. Naqvi has already answered. See Doc. #155 at 42. Accordingly, the Court will require no further response from Dr. Naqvi to revised interrogatory 6. See Fed. R. Civ. P. 26(b)(2)(C)(i) ("On motion or on its own, the court must limit the frequency or extent of discovery otherwise allowed by these rules or by local rules if it determines that: (i) the discovery sought is unreasonably cumulative or duplicative[.]").

Revised interrogatory 7 states: "In revision of plaintiffs originally submitted interrogatory #5, for which plaintiff sought to compel, it is reframed as follows: In the past twenty (20) years have you ever lied about engaging in any professional, ethical, and/or medical misconduct[.]" Doc. #176-2 at 7 (sic). An affirmative response to that question would then prompt Dr. Naqvi to answer an additional five subparts. See id. at 7-8. Dr. Naqvi objected to revised interrogatory 7 on that grounds that it is "overly broad or unduly burdensome. Plaintiff was provided the same or similar information by Naqvi in response to another set of interrogatories." Id. at 8. Notwithstanding that objection, Dr. Naqvi answered: "[P]laintiff is referred to the defendant's May 31, 2018 responses to plaintiff's 'Third Interrogatories Directed to Naqvi.'" Id. Although plaintiff does not submit any argument directed to revised interrogatory 7, see Doc. #176 at 8, the Court presumes

that his arguments directed to revised interrogatory 6 also apply to revised interrogatory 7. Interrogatory 5 of plaintiff's Third Set of Interrogatories to Dr. Naqvi asks: "In the past twenty years, have you ever lied about engaging in any profession, ethical, and/or medical misconduct." Doc. #155 at 42. Dr. Naqvi answered: "No." Id. In light of that response, the Court will require no further response from Dr. Naqvi to plaintiff's revised interrogatory 7.

B.   Revised Requests for Production

Plaintiff seeks to compel additional responses from defendants Francis and Dr. O'Halloran to revised request for production ("RFP") 1. See Doc. #175 at 5; Doc. #179 at 5. Revised RFP 1 asks: "If Revised Interrogatory #1 is yes, produce and identify any and all disciplinary documents or civil complaints relevant thereto." Id. Defendants Francis and Dr. O'Halloran each responded that an answer was "to be provided through supplement." Id. To the extent defendants Francis and Dr. O'Halloran have not already done so, each defendant shall serve his supplemental response to revised RFP 1 forthwith, and in any event, no later than **February 14, 2019.**

Plaintiff next seeks to compel additional responses from defendants Francis and Dr. O'Halloran to revised RFP 2. See Doc. #175 at 6; Doc. #179 at 6. Revised RFP 2 asks: "If revised Interrogatory #2 is yes, produce and identify any and all

disciplinary documents or civil complaints relevant thereto."
Doc. #175 at 6; Doc. #179 at 6. Each defendant objected on the
grounds that revised RFP 2 "is an inappropriate, objectionable
interrogatory." Id. Because the Court sustained the objections
to revised interrogatory 2, it will require no further response
from defendants Francis and Dr. O'Halloran to revised RFP 2.

Plaintiff seeks to compel additional responses from each
defendant to revised RFP 3. See, e.g., Doc. #175 at 6. Revised
RFP 3 asks: "If Revised Interrogatory #3(c) identifies any post
or duties assigned to you, produce and identify any such post
orders, job description or other such document describing the
duties for which you were assigned on each shift." Doc. #175 at
6. Each defendant objected: "Revised Interrogatory #3 is an
inappropriate, objectionable interrogatory. Any attempt to
incorporate that interrogatory is therefore also inappropriate
and objectionable for the same and similar reasons. The
defendant incorporates those objections here." Doc. #175-2 at 7.
Plaintiff asserts: "The information is relevant to the central
issues of this action. Further, defendants 'objection' is not
substantive, lacks merit and fails to conform with federal and
local rules." Doc. #175 at 6 (sic). Plaintiff fails to
articulate how the information sought by revised RFP 3 is
relevant to the claims remaining in this matter. He has not

sustained his burden on that point. Accordingly, the Court will require no further response to revised RFP 3 from any defendant.

Plaintiff seeks to compel additional responses from each defendant to revised RFP 4. See, e.g., Doc. #175 at 7. Revised RFP 4 asks: "If Revised Interrogatory #4, et seq. identifies any entry authored by you, produce and identify any documents in your custody and control, relevant to such entry that is either maintained by you or is otherwise not located within the plaintiffs medical records." Id. (sic). Each defendant objected: "Revised Interrogatory #4 is an inappropriate, objectionable interrogatory. Any attempt to incorporate that interrogatory is therefore also inappropriate and objectionable for the same and similar reasons. The defendant incorporates those objections here." Doc. #175-2 at 7-8. Plaintiff asserts: "The information is relevant to the central issues of this action. Further, defendants 'objection' is not substantive, lacks merit and fails to conform with federal and local rules." Doc. #175 at 7 (sic). The Court has not required any defendant to provide a response to revised interrogatory 4. Accordingly, the Court also will not order any defendant to further respond to revised RFP 4.

Plaintiff seeks to compel additional responses from each of the defendants, except defendant McChrystal, to revised RFP 5. See, e.g., Doc. #175 at 7-8; see also Doc.

#181 (motion to compel directed to defendant McChrystal).

Revised RFP 5 asks:

> If revised interrogatory #5, _et seq._ identifies any date
> on which it was your duty to pick up the medical
> mailboxes or process the contents thereof, produce and
> identify any post orders, logs, scan reports or other
> such document, that is either maintained by you or in
> your custody and control, relevant to your pick up and/or
> processing of the contents of the medical mailboxes, on
> each such date; that is not otherwise located within the
> plaintiffs medical records.

Doc. #175 at 7 (sic). Each defendant objected: "Revised

Interrogatory #5 is an inappropriate, objectionable

interrogatory. Any attempt to incorporate that interrogatory is

therefore also inappropriate and objectionable for the same and

similar reasons. The defendant incorporates those objections

here." Doc. #175-2 at 8. Plaintiff asserts: "The information is

relevant to the central issues of this action. Further,

defendants 'objection' is not substantive, lacks merit and fails

to conform with federal and local rules." Doc. #175 at 8 (sic).

In light of the Court's ruling with respect to revised

interrogatory 5, _supra_, it will not require any further response

to revised RFP 5 from defendant Shortridge. The Court also will

not require any further response to revised RFP 5 from defendant

Pillai, who answered revised interrogatory 5, under oath, that

he "does not remember collecting the contents of medical

mailboxes at MacDougall." Doc. #177-2 at 6. The Court will,

however, require defendants Dr. Naqvi, Dr. O'Halloran, Lightner,

Furtick, Candelario, Francis, Chouinard, Henderson, Bonetti, Greene, and Lovely-Bombardier to supplement their responses to revised RFP 5. To the extent the following has not already been produced, then on or before **March 4, 2019,** defendants Dr. Naqvi, Dr. O'Halloran, Lightner, Furtick, Candelario, Francis, Chouinard, Henderson, Bonetti, Greene, and Lovely-Bombardier shall produce any logs in their custody or control reflecting the retrieval or processing of the contents of the medical mailboxes from September 2013 to July 2016 by these defendants. If these documents have already been produced, then defendants should respond by providing the specific bates numbers where the responsive documents may be located in the prior production. If said documents do not exist, then also on or before **March 4, 2019,** defense counsel shall provide a sworn certification to plaintiff that a good-faith search for the documents has been made and that no such documents exist.

Plaintiff seeks to compel an additional response from Dr. Naqvi to revised RFP 6, which asks: "If Revised Interrogatory #7, et seq. identifies any lie of professional, ethical, and/or medical misconduct produce and identify any and all documentation relevant to such misconduct including any disciplinary action or civil complaint resulting therefrom." Doc. #176 at 7. Dr. Naqvi objected: "Revised Interrogatory #7 is an inappropriate, objectionable interrogatory. Any attempt to

incorporate that interrogatory is therefore also inappropriate and objectionable for the same and similar reasons. The defendant incorporates those objections here." Id. Because Dr. Naqvi's answer to revised interrogatory 7 did not identify the type of information sought by revised RFP 6, the Court will require no further response to revised RFP 6 from Dr. Naqvi.

IV.  **Conclusion**

For the reasons stated above, the Court **GRANTS, in limited part, and DENIES, in large part**, plaintiff's motions to compel directed to Francis [**Doc. #175**], Dr. Naqvi [**Doc. #176**], Lightner [**Doc. #178**], O'Halloran [**Doc. #179**], Bonetti [**Doc. #183**], Greene [**Doc. #186**], Lovely-Bombardier [**Doc. #187**], Candelario [**Doc. #189**], Chouinard [**Doc. #190**], Henderson [**Doc. #191**], and Furtick [**Doc. #192**]. The Court **DENIES in their entirety** plaintiff's motions to compel directed to Dr. Pillai [**Doc. #177**], McChrystal [**Doc. #181**], and Shortridge [**Doc. #188**].

SO ORDERED at New Haven, Connecticut, this 31st day of January, 2019.

/s/
HON. SARAH A. L. MERRIAM
UNITED STATES MAGISTRATE JUDGE